## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DELAWARE RIVERKEEPER** | : | |
| **NETWORK, et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civ. No. 18-2447** |
| | : | |
| **SUNOCO PIPELINE L.P.,** | : | |
| **Defendant.** | : | |

Diamond, J.                                            September 23, 2020

### MEMORANDUM

Having prevailed at summary judgment, Defendant Sunoco Pipeline LP seeks an award of litigation fees and costs under the Clean Water Act.  I will deny Sunoco's request, which is based not on Plaintiffs' questionable litigation conduct, but rather on the mistaken view that Plaintiffs' opposition to summary judgment was frivolous.

## I.      BACKGROUND

I have set out this matter's extensive history in my summary judgment decision.  (Mem. Op., Doc. No. 58.)  Briefly, on April 10, 2018, Plaintiffs Delaware Riverkeeper Network and "Riverkeeper" Maya van Rossum issued the requisite Notice of Violation and Intent to File Suit against Sunoco for violating the Clean Water Act during the Company's construction of the Mariner East II Project—two parallel pipelines that will transport natural gas across Pennsylvania. (Ex. A to Pls.' Mot. Summ. J.); see 33 U.S.C. § 1365(b)(1)(A).

Plaintiffs subsequently initiated this suit, alleging that Sunoco: (1) failed to obtain federal permits for its storm water discharges, in violation of, *inter alia*, the CWA and Pennsylvania's Clean Streams Act; (2) violated the same laws by discharging pollutants into Pennsylvania's

waters without federal permits; (3) violated Pennsylvania's water quality standards; and (4) violated Pennsylvania's wetland water quality standards. (Doc. No. 12); see 33 U.S.C. §§ 1311(a), 1342; 25 Pa. Code §§ 92a, 93.6(a), 96; 35 P.S. § 691.301, 307; id. § 691.202.  I granted Sunoco's Motion to Dismiss as to Counts Three and Four.  (Doc. No. 28.)  The gravamen of Plaintiffs' remaining claims was that Sunoco failed to obtain required "National Pollutant Discharge Elimination System" federal permits during ME2's construction.

The Parties cross-moved for summary judgment on the NPDES permitting claims.  On April 16, 2020, I granted Sunoco's Motion, denied Plaintiffs', and entered judgment in the Company's favor.  (Mem. Op, Doc. No. 58; Judgment, Doc. No. 59.)  Critical to my decision was the unchallenged affidavit of Pennsylvania Department of Environmental Protection official Kenneth Murin.  He averred that because the Department—the sole issuing authority—had long determined that the applicable state and federal permits provided the same environmental protections, DEP had never issued an NPDES permit for an oil and gas pipeline project.  Accordingly the DEP had issued only a state permit to Sunoco (providing even more stringent protections than a federal permit would have), and would not have issued an NPDES permit had Sunoco sought one (apparently regardless of whether the request was made before or after construction began).  As I discussed in my summary judgment decision, Plaintiffs had not challenged DEP's actions, nor had they sought to depose Murin or any DEP designee.  Accordingly, in light of Murin's undisputed averments, I ruled, *inter alia*, that the Company did not act impermissibly when it "failed" to obtain a federal permit that licensing authorities would have refused to issue.

Sunoco subsequently filed the instant Motion.  See 33 U.S.C. § 1365(d); (Def.'s Mot. for Fees & Costs, Doc. No. 60.)  The Company urges that under the CWA, it is entitled to an award

of the counsel fees and expert costs ($593,103.71) it incurred from April 16, 2019—the date on which "Sunoco provided [P]laintiffs with a copy of the Affidavit of Kenneth Murin"—through summary judgment briefing.  (Def.'s Mot. ¶ 13.)   Because Mr. Murin established that NPDES permits were not available for ME2's construction, Sunoco urges that Plaintiffs were obligated to abandon their claims upon receiving his Affidavit.  Because Plaintiffs nonetheless "continued to litigate after [it] became clear that the[ir] case was frivolous," they should pay the Company's resulting fees and costs.  (Id. at 11.)

In opposing Sunoco's request, Plaintiffs argue that their "post-Murin" contentions were not frivolous, and that a fee award "would cause financial devastation" to DRN and van Rossum. (Pls.' Sur-Reply 7–8, Doc. No. 66; see Pls.' Opp'n to Mot. for Fees & Costs 8, Doc. No. 63.)

## II.    LEGAL STANDARDS

The CWA allows "any citizen [to] commence a civil action . . . against any person . . . alleged to be in violation of . . . an effluent standard or limitation."  33 U.S.C. § 1365(a).  The Act provides for an award of litigation costs to the prevailing party:

> The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate.

33 U.S.C. § 1365(d).

Fee-shifting provisions in environmental and civil rights statutes are applied in a similar manner.  See Pennsylvania v. Del. Valley Citizens' Council, 478 U.S. 546, 559–60 (1986) (interpreting the Clean Air Act's fee-shifting provision); Morris-Smith v. Moulton Nigues Water Dist., 234 F.3d 1277, at *2 (9th Cir. 2000) (table) ("[A] prevailing defendant's motion for attorney's fees under the CWA is evaluated under the" Christiansburg standard.).  Accordingly, just as one who successfully defends a civil rights action, a prevailing defendant in a CWA citizen

suit may recover fees when the plaintiff's claims are "frivolous, unreasonable, or without foundation," or when "the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 422 (1978); Barnes Found. v. Twp. of Lower Merion, 242 F.3d 151, 157–58 (3d Cir. 2001) ("[T]he standard for awarding attorney's fees to prevailing defendants is more stringent than that for awarding fees to prevailing plaintiffs.").

Although there is "no strict rule" for determining when a claim is frivolous, several factors guide the analysis, including whether:

> the plaintiff established a prima facie case, the defendant offered to settle, the trial court dismissed the case prior to trial or the case continued until a trial on the merits[,] . . . . the question in issue was one of first impression requiring judicial resolution, the controversy is based sufficiently upon a real threat of injury to the plaintiff,  the trial court has made a finding that the suit was frivolous under the *Christiansburg* guidelines, and the record supports such a finding.

Barnes Found. v. Twp. of Lower Merion, 242 F.3d 151, 158 (3d. Cir. 2001).

The Supreme Court has admonished that before shifting fees,

> it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that because a plaintiff did not ultimately prevail his action must have been unreasonable or without foundation.

Id. at 421–22.

## III.   DISCUSSION

In seeking fees and costs based on Plaintiffs' actions only after the Company submitted the Murin Affidavit, Sunoco has grabbed the wrong end of the stick.  Plaintiff's conduct *before* – not after – receiving the Murin Affidavit is questionable.

### *Gravamen of Plaintiff's Claims*

From the outset, Plaintiffs accused Sunoco of disregarding its legal obligation to obtain federal discharge permits.  In their Amended Complaint, Plaintiffs alleged:

> Sunoco failed to secure the appropriate water pollution permits designed to control

> these discharges. Whether Sunoco's actions, and failures to act, stem from a series of calculated business decisions or complete indifference to Pennsylvania's regulatory efforts, Sunoco has endangered the environment and violated state laws, federal laws, rules, and permits designed to protect the quality of Pennsylvania's waters. Specifically, Sunoco has violated various provisions of both the federal Clean Water Act, and Pennsylvania's Clean Streams Law.

(Am. Compl. 2.)  Plaintiffs returned to this theme repeatedly in their Amended Complaint. See id. at ¶¶ 178 ("From April 10, 2018 to present, Sunoco has failed to obtain the appropriate coverage under Pennsylvania's NPDES permitting program.") See also id. at ¶¶ 117, 182.  Indeed, in their "request for relief" Plaintiffs ask me to fine the Company $37,500 for each day it worked on ME2 construction without a federal permit, and "Permanently enjoin Defendant Sunoco to submit to the Department a written notice of intent, and/or application, to obtain coverage under a general or individual NPDES permit." (Id. at ¶¶ VI.C/G.)

Plaintiffs' also repeatedly alleged that the Pennsylvania Erosion and Sediment Control permits Sunoco had secured from DEP were not "equivalent" to the federal NPDES permits Plaintiffs urged were required because the state permits "d[id] not impose conditions" sufficient to "protect waters of the United States and conform to federal law."  (Id. ¶¶ 100, 102, 104.) In opposing Sunoco's Motion to Dismiss, Plaintiffs again emphasized the deficiencies of E&S permits, "which fall[] far short of the protective measures" provided by their federal counterparts. (Pls.' Mem. ISO Opp'n to Mot. to Dismiss 16, Doc. No. 20.)  Plaintiffs noted five differences: (1) E&S permits do not require a "quantitative stormwater analysis," thus allowing potentially greater volumes of runoff; (2) E&S permits have more forgiving standards for disturbing existing riparian buffers; (3) E&S permit violations expose the permittee to lower fines; (4) E&S permit applicants are subject to less "robust public participation requirements"; and (5) E&S permit applicants "are not required to make non-confidential reports . . . available for public inspection." (Id. 10–18.)

*Plaintiffs' New Theory of Liability*

Confronted with the Murin Affidavit, which details the efforts Sunoco undertook *to comply* with DEP's instruction to obtain E&S permits, Plaintiffs argued unsuccessfully that the Affidavit should be stricken.  (See Pls.' Resp. to Def.'s SUMF ¶ 3; Mem. Op. 7–8.)  At the same time, Plaintiffs changed their theory of liability.  (See, e.g., Pls.' Opp'n to Def.'s Mot. Summ. J. 22–23.) They now urged that DEP improperly failed to require the Company to seek NPDES permits once ME2 construction began.  Plaintiffs thus abandoned the contention that Sunoco in "a series of calculated business decisions" intentionally chose not to seek federal permits.  Rather, Plaintiffs impugned the Department's erroneous permitting decisions and Sunoco's purported failure to challenge those decisions.

Plaintiffs also retreated from their earlier position that NPDES permits offer substantially stronger environmental protections than the E&S permits Sunoco obtained at DEP's direction:

> It is irrelevant that Sunoco or its experts believe that state permits are as good as or better than an NPDES permit.  The CWA does not have an exception for those who think their state permits are just as good. Sunoco is required to follow the law as written.

(Pls.' Opp'n to Def.'s Mot. Summ J. 20–21.)  Plaintiffs' reversal is perhaps best explained by their inability to marshal any evidence to support their allegations respecting the difference between E&S and NPDES permits.  To the contrary, Plaintiffs' own expert testified that he knew of no differences "between the two."  (See, e.g., Deposition of Mark Gallagher 27:7–15, Ex. 5 to Def.'s Mot. Summ. J.)

These significant changes notwithstanding, in opposing Sunoco's fee request Plaintiffs allege—some two years after filing their Amended Complaint—that the Murin Affidavit contained nothing new:

> DRN knew from the outset of this litigation that PADEP did not believe an NPDES

6

> permit was necessary for Sunoco's discharges, and that PADEP did not intend on requiring Sunoco to obtain one. PADEP's inaction (failure to diligently prosecute) is the basis of the entire citizen suit. Murin's affidavit simply describes PADEP's and Sunoco's interpretation of the law, which DRN believed to be incorrect.

(Pls.' Opp'n to Mot. for Fees & Costs 9 (citation omitted).)  This statement is striking in its improbability: nothing in the Amended Complaint or Plaintiffs' earlier briefing even hinted that they knew Department's positions and policies.  To the contrary, had they known, from the outset Plaintiffs presumably would have challenged DEP for failing to require NPDES permits, and for not requiring Sunoco to apply for NPDES permits after the construction began.  Plaintiffs chose instead to allege that Sunoco "failed" to obtain NPDES permits as a "calculated business decision" to defy the law, and that the Company acted with "complete indifference to Pennsylvania's regulatory efforts."  (Am. Compl. 2.)

Once again, Plaintiffs asked me to grant a mandatory injunction and order Sunoco to apply for a federal permit that they now say they then knew DEP would not issue and, indeed, had never issued for similar projects.  Moreover, if from the outset Plaintiff knew of the DEP's actions and policies that Murin detailed, then they knew that some of their allegations in the Amended Complaint, as well as arguments in opposing Sunoco's Motion to Dismiss and Summary Judgment Motion, were wrong: Sunoco had *complied* with the directions of Pennsylvania's regulators, whose decisions and instructions were the actual objects of Plaintiffs' ire. Plaintiffs thus appear to have made up facts in attacking Sunoco – facts that turned out to be untrue.

In these circumstances, regardless of  whether or not Plaintiffs knew from the outset of the information in the Murin Affidavit, Plaintiffs and their counsel acted questionably.  See Chambers v. NASCO, Inc., 501 U.S. 32, 47 (1991). Sunoco has not sought sanctions on this ground however, and, as final judgment has been entered, it is now precluded from doing so.  Simmerman v. Corino, 27 F.3d 58, 63 (3d Cir. 1994).

7

### *An Award of Fees Under the Clean Water Act Is Unwarranted*

Once again, Sunoco urges that after it produced the Murin Affidavit, it was apparent that Plaintiffs' claims were "frivolous, unreasonable or groundless."  See Christiansburg, 434 U.S. at 422.  Accordingly, the Company argues that it's entitled to litigation fees and costs incurred after that date.  I disagree.

As I have discussed, after they received the Murin Affidavit, Plaintiffs changed their theory of liability, now arguing that under the CWA, Sunoco was obliged to obtain an NPDES permit, even if it was no different in substance from the Department's E&S permit:

> Even if state permits were equal to or more stringent than NPDES permits, such would be irrelevant. The law requires what the law requires and it is not the province of Sunoco, or even the Department, to decide when and under what circumstances it will comply with the law.

(Pl.'s Resp. to Def.'s Mot. Summ. J. 1-2.) Significantly, this belated tough talk notwithstanding, Plaintiffs never challenged the DEP's decision to issue E&S permits, although they could have. See Delaware Riverkeeper Network v. Secretary Pennsylvania Department of Environmental Protection, 903 F.3d 65, 75 (3d Cir. 2018).  It thus appears that in opposing the Company's request for summary judgment, Plaintiffs urged that Sunoco should have challenged the DEP's favorable decision to issue E&S permits for ME2.  Although I found this contention less than persuasive, I am not prepared to find it frivolous. See Hughes v. Rowe, 449 U.S. 5, 15-16 (1980) ("Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation'….").

I have detailed the regulatory regime by which, some 11 years ago, the Environmental Protection Agency delegated to DEP the issuance of NPDES permits.  (Mem. Op. 3-5, Doc. No. 58.) The EPA has similar arrangements with the environmental regulatory agencies in other states. See, e.g., Connecticut Fund for the Environment v. Job Plating Co., Inc., 623 F.Supp. 207, 210 n.

2 (D. Conn. 1985); <u>Center for Biological Diversity v. Swift Beef Company</u>, 2020 WL 2914868, at

*1 (D. Col. June 2, 2020); <u>Delaware Riverkeeper Network v. New Jersey Department of</u>

<u>Environmental Protection</u>, 463 A.3d 875, 881 (N.J. Super. March 18, 2020).  Like DEP, some of

these agencies issue their own state discharge permits for pipeline construction, in lieu of NPDES

permits. <u>See, e.g.</u>, <u>Sierra Club v. State Water Control Board</u>, 898 F.3d 383, 391 (4th Cir. 2018).

Like Pennsylvania E&S permits, these state permits offer equal or greater protection than their

NPDES counterparts.  <u>Id</u>. (explaining that Virginia's non-NPDES state permits "impose the same

substantive requirements on natural gas pipeline projects" as would be required under the state's

NPDES permit).

    Although Sunoco urges that "this was not a case of first impression," in fact, no court

appears to have addressed these arrangements.  (Pl.'s Mem. ISO Fees at 7.)  Although it is difficult

to see why any court would elevate form over substance and invalidate a state discharge permit in

such circumstances, it remains an open question and so cannot be deemed frivolous. <u>Barnes</u>, 242

F.3d at 158.

    Construing Plaintiffs' arguments against Sunoco's summary judgment request liberally, it

appears that, however belatedly, Plaintiffs were seeking to raise this open question.  In these

circumstances, I will not shift fees and costs onto Plaintiffs.

    ***Plaintiffs Are Unable to Pay a Fee Award***

    In the alternative, I conclude that because the imposition of some $600,000 in fees and

costs would be ruinous to DRN and Ms. van Rossum, I will not make the award.  <u>See</u> <u>Andrade v.</u>

<u>Jamestown Hous. Auth.</u>, 82 F.3d 1179, 1193 (1st Cir. 1996); <u>Charves v. W. Union Telegraph Co.</u>,

711 F.2d 462, 465 (1st Cir. 1983) ("an award of attorney's fees to a prevailing defendant must not

be oblivious of a plaintiff's financial capacity").  Plaintiff DRN has twenty-three full-time

9

employees and a yearly payroll of $1.4 million. In any given year, the Organization might operate at a net loss as it relies primarily on donations and grants.  (DRN IRS Form 990, Ex. B to 2d Aff. of Neil S. Witkes; see Pls.' Sur-Reply 7–8); see Waterkeeper Alliance v. Hudson, 2013 WL 4561739, at *2 (D. Md. Aug. 27, 2013) (in declining to award fees, the Court found significant that the unsuccessful plaintiff "seeks no monetary relief for itself, but only acts to protect the public interest (or, at least, its perception of the public interest)").   Ms. van Rossum's financial information—which I will make available to Sunoco for "attorneys' eyes only"—confirms that she is of modest means.

In these circumstance, I will not impose fees and costs on her.

IV.     **CONCLUSION**

As I have discussed, although it appears that Plaintiffs and their lawyers have litigated in a questionable manner, I will not shift fees and costs as Sunoco urges.

An appropriate Order follows.

September 23, 2020                                        **AND  IT IS SO ORDERED**

                                                                        */s/ Paul S. Diamond*
                                                                        _____

                                                                        Paul S. Diamon

10